**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 2:18-CR-147** |
| **Plaintiff,** | |
| | **JUDGE GRAHAM** |
| **v.** | |
| **BILAL A. EL YOUSSEPH,** | **Sentencing Memorandum** |
| **Defendant.** | **of the United States** |

The United States hereby submits its Sentencing Memorandum. There are no unresolved objections. For the reasons that follow, a sentence of 159 months of imprisonment, to be followed by 5 years of supervised release, would be sufficient but not greater than necessary to achieve the statutory goals of sentencing. Under the Plea Agreement, the preliminary forfeiture order, and Federal Rule of Criminal Procedure 32.2(b)(4), forfeiture is also required in this case.

## BACKGROUND

On July 19, 2018, a federal grand jury in this district returned an indictment charging Defendant Bilal A. El Yousseph with one count of Possession with Intent to Distribute Alprazolam, in violation of 21 U.S.C. § 841(a)(1) and (b)(2), and one count of Carrying a Firearm During and In Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Indictment, R.3.) These allegations arose out of a traffic stop of a vehicle Mr. El Yousseph was driving on June 4, 2018. *See* PSR ¶ 12. In his car, Westerville police found a loaded 9-millimeter pistol, 285 Xanax pills, 3 Fentanyl pills, 4 Ritalin pills, marijuana, drug-packaging materials, other drug paraphernalia, and a cell phone. PSR ¶ 14. A search of the cell phone found videos depicting Mr. El Yousseph and others threatening a victim they believed had stolen Xanax from the drug-trafficking operation. PSR ¶ 16. The videos showed Mr. El

Yousseph and others pointing firearms at the victim, threatening to kill him if he did not confess to stealing the pills, and threatening to kill him and his family if they reported the incident to police. PSR ¶¶ 17, 18. All of this occurred in Westerville, Ohio, on February 11, 2018. PSR ¶¶ 16, 17.

Having investigated the facts underlying the videos, the United States approached Mr. El Yousseph with a plea offer to resolve charges arising both out of the June 2018 traffic stop and out of the February 2018 video-recorded threats. On November 30, 2018, the Parties filed a Plea Agreement pursuant to a Superseding Bill of Information filed that same day. (*See* R.23, R.24.) The Bill of Information alleged that Mr. El Yousseph engaged in a conspiracy to traffic marijuana, Adderall, and Xanax. (Superseding Information, R.24 at 48–49 (all page numbers refer to the PAGEID # in the ECF header).) It further alleged that Mr. El Yousseph and others carried firearms for the purpose of protecting the drug-trafficking operation, and that Mr. El Yousseph and others used the firearms to threaten violence against others to achieve the conspiracy's goals. (*Id.* at 49.) The Superseding Information also alleged that Mr. El Yousseph brandished a firearm during and in relation to the drug-trafficking crime. (*Id.* at 50.) It also contained a Forfeiture Allegation, providing notice that the United States intended to forfeit three firearms, assorted ammunition and magazines, and a cell phone. (*Id.* at 50–51.)

In the Plea Agreement, Mr. El Yousseph admitted these allegations and agreed to plead guilty to both counts of the Superseding Information. (Plea Agreement, R.23 at 39.) He recognized that the firearm charge carried a seven-year mandatory-minimum sentence, to be served consecutive to any term of imprisonment on the drug charge. (*Id.* at 40.) The Plea

Agreement was filed pursuant to Criminal Rule 11(c)(1)(C), and the Parties initially agreed to a term of imprisonment of 144 to 264 months—that is, 12 to 22 years. (*Id.* at 41.)

One consideration driving the agreed sentencing range was the fact that Mr. El Yousseph faced legal jeopardy for two violations of 18 U.S.C. § 924(c)—one for the June 2018 traffic stop and one for the February 2018 video-recorded threats. Under the law existing at the time of the initial Plea Agreement, if tried and convicted of both counts of § 924(c), Mr. El Yousseph would have received a total mandatory prison term of 30 years—5 years for one count and a consecutive 25-year term for the second count. That is because the Supreme Court held that a "second or subsequent conviction" triggering § 924(c)'s consecutive 25-year mandatory minimum sentence can arise from the same charging instrument as the first conviction. *Deal v. United States*, 508 U.S. 129 (1993).

That rule changed when the President signed the First Step Act on December 21, 2018. Under the Act, the 25-year mandatory minimum does not apply unless the defendant has a prior § 924(c) conviction that became final before his current § 924(c) violation. *See* 18 U.S.C. § 924(c)(1)(C). Mr. El Yousseph did not have that. Under the First Step Act, two § 924(c) convictions from the same charging instrument still carry mandatory consecutive sentences, but the second violation does not carry a 25-year mandatory minimum if the first conviction arose from the same charging instrument. *See id*. That change applies to all defendants who have not been sentenced prior to December 21, 2018. Under the First Step Act, Mr. El Yousseph would have, if tried and convicted of both § 924(c) violations, faced a potential minimum term of imprisonment of 12 years—7 for the February 2018 video-recorded threats, and a consecutive 5 for the June 2018 traffic stop.

In light of the change in the law, Mr. El Yousseph filed an unopposed motion to withdraw his guilty pleas, which the Court granted. (Motion, R.33; Order, R.34.) The Parties then entered into a new Plea Agreement, wherein they agreed that a sentence between 84 and 264 months—7 to 22 years—would be the appropriate disposition in this case. (Plea Agreement, R.36 at 79.) Mr. El Yousseph pleaded guilty pursuant to the new plea agreement on June 12, 2019, and the Court later accepted his guilty plea and adjudged him guilty. (*See* Order, R.42.)

The Probation Office released the Final Presentence Investigation Report on July 2, 2019. Sentencing is scheduled for August 23, 2019.

The Probation Officer calculated that Mr. El Yousseph's Total Offense Level is 13 and that his Criminal History Category is II. The Probation Officer correctly noted that these calculations would result in advisory guidelines ranges on Count One of 15 to 21 months' imprisonment; a fine of $7,500 to $1,000,000; and supervised release of 3 years. PSR ¶¶ 82, 88, 92. On Count Two, the guidelines imprisonment range is 84 months, which must be imposed consecutively to any other term of imprisonment, and the guidelines recommend 2 to 5 years of supervised release. PSR ¶¶ 83, 88. The Probation Officer's recommended sentence is a total term of imprisonment of 99 months, to be followed by a 5 year term of supervised release. He recommends no fine, and also notes that forfeiture is mandatory in this case.

## ARGUMENT

Based on the factors listed in 18 U.S.C. § 3553(a), the United States recommends a total sentence of 159 months' imprisonment, to be followed by 5 years of supervised release. Forfeiture is also required.

The nature and circumstances of the offense principally drive the United States' recommendation. *See* 18 U.S.C. § 3553(a)(1). Mr. El Yousseph was the leader and organizer of

4

an armed drug-trafficking conspiracy. He recruited juveniles to join the conspiracy. And when he believed someone stole from the operation, he pointed firearms at him, tormented him, and threatened to kill him and his family.

The investigation into Mr. El Yousseph began with a routine traffic stop. PSR ¶ 12. On June 4, 2018, police received reports of an impaired driver on the main drag in Westerville. *Id.* The car, later discovered to be driven by Mr. El Yousseph, narrowly avoided a collision with another car and ran into a curb. *Id.* The police pulled the car over and found Mr. El Yousseph to be impaired. *Id.* He was arrested, and police searched the car. PSR ¶¶ 13–14. They found a loaded 9-millimeter pistol, 285 Xanax pills, and small amounts of fentanyl, marijuana, and Ritalin. PSR ¶ 14. They also found baggies for trafficking pills, several boxes of ammunition, a police-style badge that read "Special Police," and—importantly to this case—a cell phone. *Id.*

A forensic search of the cell phone found videos and photographs depicting a harrowing encounter: On February 11, 2018, Mr. El Yousseph led other members of his drug-trafficking organization to the home of an individual this Sentencing Memorandum will describe as Victim A. PSR ¶ 16. Two members of the conspiracy were missing bulk amounts of Xanax and believed the pills to have been stolen. *Id.* Before the events depicted in the videos, Victim A had denied stealing the Xanax and had implicated another person. *Id.* Mr. El Yousseph disbelieved Victim A's denials and wanted a confrontation. *Id.*

The videos, which are in the possession of the Probation Officer and available to the Court, depict the confrontation. The longest video, at twenty minutes, begins with Victim A in his own basement writing a confession with at least two guns pointed to his head. Mr. El Yousseph directs him to write faster, and then says, "It ain't gonna be the head first. It's gonna

5

be the kneecaps." Mr. El Yousseph then directs another member of the conspiracy to put a pistol to Victim A's kneecaps. The video shows a juvenile female comply with Mr. El Yousseph's orders. When Victim A does not follow Mr. El Yousseph's orders to his satisfaction, he directs another person to point a gun at Victim A. At this point, two firearms are pointed at the back of the victim's head, and one is pointed at his knees. Mr. El Yousseph and others continue to threaten Victim A as he writes the confession.

Mr. El Yousseph then asks another members of the conspiracy, "Can you do me a favor, bro? Can you Google, 'What's the most painful place to get shot?'" When the other individual reports that the most painful place to get shot is the base of the skull, Mr. El Yousseph places his Glock on the base of Victim A's skull.

As Victim A continues to write, Mr. El Yousseph criticizes his handwriting: "Make sure you write in big letters. . . . If your shit look ugly, bro, let me tell you something, bro, you're gonna look even uglier." Mr. El Yousseph says that the person he "beat up last" had to get "reconstructive surgery" and his "mom didn't recognize him when he got in the CAT scan." After several minutes of threats, Victim A finishes writing the letter. The letter was later found in Mr. El Yousseph's car in the June 4 traffic stop.

Once the letter is finished, Mr. El Yousseph racks the firearm and a round is discharged, demonstrating that the firearm was loaded. He says that Victim A and his whole family will be "buried" and "under the dirt" if he reports Mr. El Yousseph or the other coconspirators to the police. Mr. El Yousseph puts a cloth over the lower half of his face and points two guns at the back of Victim A's head. He demands that Victim A look into the cell phone camera and repeat a confession after him. During the confession, a juvenile male adds a third gun to the mix. Mr. El

Yousseph says, "My finger fucking itching, bro. I just want to pull it." The video ends with Mr. El Yousseph pressing a gun against the side of the victim's nose and threatening to blow it off if he does not confess.

Another video depicts more moments of suffering. Mr. El Yousseph directs the juvenile female to start a ten-second timer on her phone. Mr. El Yousseph then tells Victim A that he has ten seconds to confess fully. He says "if that 10 seconds [sic] timer ends, and I don't hear you saying" what Mr. El Yousseph tells him to say, "it's going to be really really really really really bad," and that Mr. El Yousseph was "going to tell [the person holding the cell phone] to turn off the camera. You know what that means, right?" As he interrogates Victim A, Mr. El Yousseph presses the firearm against the victim's forehead and groin. This redacted screenshot shows Mr. El Yousseph threatening the victim while the juvenile female uses the ten-second timer:



While Mr. El Yousseph continues the threats, the male juvenile picks up a firearm and racks it; a round is discharged, showing that this gun, too, was loaded. Mr. El Yousseph counts down multiple times, each time with the threat that the expiration of the timer will lead to the end of the victim's life if he does not confess to Mr. El Yousseph's satisfaction. Further investigation determined that one of the juveniles discharged one of the firearms, though the bullet did not hit anyone. PSR ¶ 17.

The traffic stop on June 4 shows that this basement incident did not mark the end of Mr. El Yousseph's criminal activity. Text messages on his phone reveal that he dealt drugs nearly on a daily basis between the February threats and the June traffic stop. And the traffic stop showed his willingness to possess firearms in furtherance of his drug trafficking. As the Supreme Court has recognized, "drugs and guns are a dangerous combination," *Smith v. United States*, 508 U.S. 223, 240 (1993), and Mr. El Yousseph was caught with that deadly cocktail twice.

Putting all this together, Mr. El Yousseph organized and led a drug-trafficking operation for several months. He protected his drug operation with firearms. To carry out the drug trafficking, he recruited juveniles and supplied them with guns. When he thought someone had stolen from him, he unlawfully restrained him in his basement. He engaged in a prolonged, terrifying humiliation of the victim. Moments like the ten-second countdown and asking a coconspirator to search the most painful place to be shot are best described as torture. Worse yet, Mr. El Yousseph involved others in his sadistic acts, including two juveniles. And he evaded law enforcement scrutiny for a time in part because he threatened to kill the victim and his family if they reported all this to law enforcement. His crimes deserve serious punishment. *See* 18 U.S.C. § 3553(a)(2)(A) (directing the Court to consider the need for the sentence "to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense").

The Sentencing Guidelines contain multiple policy statements that support the United States' recommended sentence. *See* 18 U.S.C. § 3553(a)(5) (directing the Court to consider "any pertinent policy statement" issued by the Commission). One policy statement recognizes that a higher sentence may be appropriate if a person—like Victim A here—"was abducted" or "unlawfully restrained." U.S.S.G. § 5K2.4. Another guideline identifies the use of a weapon and the "manner in which it was used" as an aggravating factor. U.S.S.G. § 5K2.6. Mr. El Yousseph's humiliation and threats toward the victim go to the policy statement about "unusually heinous, cruel, brutal, or degrading" conduct toward a victim, including "prolonging of . . . humiliation." U.S.S.G. § 5K2.8. To be clear, the United States is not seeking a departure under these guidelines, but instead believes they are relevant in carrying out the congressional directive to consider all the statutory sentencing factors, including policy statements.

The United States' recommendation of 159 months' imprisonment was established with an eye toward congressional judgment. *See* 18 U.S.C. § 3553(a)(4) (directing the Court to consider the "kinds of sentence and the sentencing range" established for the offenses). In the February incident, Mr. El Yousseph brandished multiple firearms during and in relation to his drug trafficking crime—an offense Congress has concluded warrants a seven-year, mandatory-minimum sentence. 18 U.S.C. § 924(c)(1)(A)(ii). In the June incident, Mr. El Yousseph carried a firearm during and in relation to his drug trafficking crime. Congress has determined that such an offense should carry a five-year, mandatory-minimum sentence. 18 U.S.C. § 924(c)(1)(A)(i). On top of that, he led a conspiracy to distribute multiple controlled substances, for which the U.S.

Sentencing Guidelines recommend a sentence of 15 to 21 months in prison. PSR ¶ 82. Adding those up—seven years plus five years plus fifteen months—comes to the United States' recommendation of 159 months in prison. To that end, the United States recommends a 15 month term of imprisonment on Count One and a 144-month prison sentence on Count Two, to be served consecutive to one another.

When it comes to the defendant's history and characteristics, it is mostly a positive story, with a few red flags. *See* 18 U.S.C. § 3553(a)(1). Mr. El Yousseph has no felony criminal history and likely has a less serious criminal record than most defendants charged in this district with drug and firearms charges. *See* PSR ¶¶ 48–57. His past convictions, however, relate to some of the acts that led to the charges in this Court. In 2010, Mr. El Yousseph and three others assaulted a high school student. PSR ¶ 49. The victim suffered swelling, a contusion, and multiple lacerations as a result. *Id.* Mr. El Yousseph paid a small fine and court costs. *Id.* Mr. El Yousseph has three prior convictions for alcohol-related offenses, PSR ¶¶ 50–52, and one marijuana-related offense, PSR ¶ 53. Harming a victim with a group of coconspirators and problems with substance abuse are both parts of this case, too. The United States is hopeful that the charges in this case represent an aberration, rather than an escalation.

Employment history and family characteristics give reason to hope that Mr. El Yousseph will not reoffend. Mr. El Yousseph worked during his high school years and had steady employment from 2007 until the date of his June 2018 traffic stop. PSR ¶¶ 75–79. Mr. El Yousseph also reported to the Probation Officer a "good upbringing" and close family ties. PSR ¶ 60. Indeed, he lived with his parents and two of his siblings until his arrest. PSR ¶ 62. In his

10

family home, Mr. El Yousseph was not exposed to abuse, neglect, or substance abuse. PSR ¶ 60. Mr. El Yousseph also promptly accepted responsibility for his criminal acts.

One area of concern, however, is Mr. El Yousseph's substance abuse. He reports first smoking marijuana at age 13 and developing a dependency within a year. PSR ¶ 69. He first used cocaine as a teenager and later became addicted to the substance. PSR ¶ 70. On top of all that, he abused Xanax. *Id.* At the time of his arrest, he was a daily user of cocaine, marijuana, and Xanax. Despite his longtime use and past convictions related to substance abuse, he has never received treatment. PSR ¶ 71. This leads to two concerns. First, Mr. El Yousseph's substance abuse supports the United States' recommended sentence because "[s]ubstance abuse is highly correlated to an increased propensity to commit crime." U.S.S.G. § 5H1.4. Second, it calls for recommendations that Mr. El Yousseph receive any available drug treatment while in prison and that he be required to engage in testing and treatment while on supervised release.

Taking into account Mr. El Yousseph's crime, his criminal history, his substance abuse history, his other personal characteristics, the pertinent policy statements of the U.S. Sentencing Commission, and his acceptance of responsibility, the United States' recommended sentence is appropriate.

11

## CONCLUSION

For these reasons, a total sentence of 159 months' imprisonment and 5 years of supervised release would be sufficient but not greater than necessary to achieve the statutory goals of sentencing. Forfeiture is also required.

**Respectfully submitted,**

BENJAMIN C. GLASSMAN
United States Attorney


s/ Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone No.: (614) 469-5715
Fax No.: (614) 469-5653
Email: peter.glenn-applegate@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Sentencing Memorandum of the United

States was served this 16th day of August, 2019, electronically upon counsel of record.

s/Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney